UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------X
NATALIYA SERGEEVNA SHTYKOVA,

                Petitioner,                       CV-10-4999 (SJF)

    -against-

                                           **OPINION & ORDER**

ERIC H. HOLDER, U.S. Department of Justice, Attorney
General; ANDREA J. QUARANTILLO, U.S. Citizenship
and Immigration Services, District Director New York
Office; ALEJANDRO MAYORKAS, U.S. Citizenship
and Immigration Services, Director; and JANET
NAPOLITANO, U.S. Department of Homeland Security
Secretary,

                Respondents.
---------------------------------------------------------X

FEUERSTEIN, J.

On or about October 27, 2010, petitioner Nataliya Sergeevna Shtykova ("petitioner") commenced this proceeding against respondents Eric H. Holder, U.S. Department of Justice, Attorney General; Andrea J. Quarantillo, U.S. Citizenship and Immigration Services, District Director New York Office; Alejandro Mayorkas, U.S. Citizenship and Immigration Services, Director; and Janet Napolitano, U.S. Department of Homeland Security Secretary, (collectively, "respondents"), seeking judicial review of the denial of her application for naturalization pursuant to Section 310(c) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1421(c). By order dated March 22, 2012, respondents' unopposed motion to dismiss the petition pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure was granted and the petition was

dismissed in its entirety with prejudice for failure to state a claim for relief.[1] Judgment was entered in favor of defendants on March 27, 2012. Pending before the Court are petitioner's *pro se*[2] motions: (1) to vacate and set aside the judgment pursuant to Rules 60(b)(1) and (6) of the Federal Rules of Civil Procedure; and (2) for leave to replead. For the reasons set forth below, petitioners' motions are denied.

I. Discussion

A. Standard of Review

Rule 60(b) provides, in relevant part, that "the court may relieve a party * * * from a final judgment, order, or proceeding for * * * (1) mistake, inadvertence, surprise, or excusable neglect * * *; or (6) any other reason that justifies relief." "The decision whether to grant a party's Rule 60(b) motion is committed to the sound discretion of the district court * * *." Stevens v. Miller, 676 F.3d 62, 67 (2d Cir. 2012) (internal quotations and citation omitted). "Rule 60(b) provides a mechanism for extraordinary judicial relief available only if the moving party demonstrates exceptional circumstances." Motorola Credit Corp. v. Uzan, 561 F.3d 123, 126 (2d Cir. 2009) (quotations, alterations and citations omitted). "Relief under Rule 60(b) is generally not favored

---

[1] Due to a clerical error, the Court's docket designated petitioner as *pro se* throughout this proceeding, even though the petition was filed by counsel Smotritsky & Spektor, PLLC. Thus, the March 22, 2012 order erroneously refers to petitioner as *pro se* and was served upon her personally, rather than upon her counsel. Nonetheless, respondents properly served their motion to dismiss upon petitioner's counsel, who failed to serve or file any opposition thereto. (See Doc. Nos. 5 and 6). Respondents' motion to dismiss was decided upon the merits of the claims set forth in the petition, under the more deferential standard afforded to *pro se* petitioners, not upon procedural grounds, e.g., for failure to oppose the motion.

[2] Although, as noted above, petitioner was previously represented by counsel, she filed the instant motions *pro se* in light of her counsel's failure to represent her in this action.

* * *." Insurance Company of North America v. Public Service Mutual Insurance Company, 609 F.3d 122, 131 (2d Cir. 2010) (quotations and citation omitted).

In order to be entitled to relief under Rule 60(b), the evidence in support of the motion must be "highly convincing," the moving party must "show good cause for the failure to act sooner," and there must not be any "undue hardship * * * imposed on other parties." Kotlicky v. United States Fidelity & Guar. Co., 817 F.2d 6, 9 (2d Cir. 1987); see also Feldman Law Group P.C. v. Liberty Mut. Ins. Co., 819 F. Supp. 2d 247, 266-67 (S.D.N.Y. 2011), aff'd, 476 Fed. Appx. 913 (2d Cir. Apr. 18, 2012). "The burden of demonstrating that the motion is justified rests with the moving party," Williams v. New York City Department of Corrections, 219 F.R.D. 78, 84 (S.D.N.Y. 2003); see also United States v. International Brotherhood of Teamsters, 247 F.3d 370, 391 (2d Cir. 2001), and "[t]he strict evidentiary requirements [of Rule 60(b)] apply as well to *pro se* litigants." Jedrejcic v. Croatian Olympic Committee, 190 F.R.D. 60, 77 (E.D.N.Y. 1999); see also Williams, 219 F.R.D. at 84 ("[P]ro se litigants are not excused from the requirement that they produce highly convincing evidence to support a Rule 60(b) motion." (quotations, alterations and citations omitted)); Gil v. Vogliano, 131 F.Supp.2d 486, 494 (S.D.N.Y. 2001) (accord).

B.   Rule 60(b)(1)

Petitioner bases her motion for relief from the final judgment against her primarily upon the failure of her counsel to oppose respondents' motion to dismiss and seek leave to replead the petition. Petitioner does not explain the reason for her counsel's failure to act on her behalf in this action, nor provide any indication that she made any attempts to obtain an explanation from

3

him for his failure to represent her.

"Relief from counsel's error is normally sought pursuant to Rule 60(b)(1) on the theory that such error constitutes mistake, inadvertence or excusable neglect." Nemaizer v. Baker, 793 F.2d 58, 62 (2d Cir. 1986). Nonetheless, a party is "bound by the inexcusable conduct of her counsel * * * [absent a] particularized showing of exceptional circumstances explaining [counsel's] gross negligence and [some] indication of diligent efforts by [the party] to induce [counsel] to fulfill his duty." Dominguez v. United States, 583 F.2d 615, 618 (2d Cir. 1978). The Second Circuit has "consistently declined to relieve a client under subsection (1) [of Rule 60(b)] of the 'burdens of a final judgment entered against him due to the mistake or omission of his attorney by reason of the latter's ignorance of the law or other rules of the court, or his inability to efficiently manage his caseload." Nemaizer, 793 F.2d at 62; see also Badian v. Elliott, 165 Fed. Appx. 886, 890 (2d Cir. Jan. 23, 2006) (summary order) (accord). "This is because a person who selects counsel cannot thereafter avoid the consequences of the agent's acts or omission." Nemaizer, 793 F.2d at 62; see also Link v. Wabash Railroad Co., 370 U.S. 626, 633-34, 82 S. Ct. 1386, 8 L. Ed. 2d 734 (1962) ("Petitioner voluntarily chose this attorney as his representative in the action, and he cannot now avoid the consequences of the acts or omissions of this freely selected agent.") Moreover, "[m]ere dissatisfaction in hindsight with choices deliberately made by counsel is not grounds for finding the mistake, inadvertence, surprise or excusable neglect necessary to justify Rule 60(b)(1) relief." Nemaizer, 793 F.2d at 62. "[A]n attorney's actions, whether arising from neglect, carelessness or inexperience, are attributable to the client, who has a duty to protect his own interests by taking such legal steps as are necessary. * * * To rule otherwise would empty the finality of judgments rule of meaning."

4

Id. at 63 (citation omitted).

Absent any indication regarding the reason for counsel's failure to oppose respondent's motion to dismiss, there can be no finding that his neglect in this action was excusable. Since petitioner's counsel's failure to oppose respondents' motion to dismiss does not afford a basis for relief under Rule 60(b)(1), see, e.g. Frantz v. United States Department of Defense, 260 Fed. Appx. 325 (2d Cir. Dec. 28, 2007) (summary order) ("The District Court correctly determined that Rule 60(b)(1) did not entitle [the plaintiff] to relief because he did not demonstrate that his attorney's failure to oppose defendant's summary judgment motion was excusable neglect."), the branch of petitioner's motion seeking relief from the final judgment pursuant to Rule 60(b)(1) of the Federal Rules of Civil Procedure is denied.

C.   Rule 60(b)(6)

Rule 60(b)(6) "is a 'grand reservoir of equitable power to do justice in a particular case[,]' * * * [b]ut that reservoir is not bottomless." Stevens, 676 F.3d at 67 (quoting Matarese v. LeFevre, 801 F.2d 98, 106 (2d Cir. 1986)); see also Motorola Credit, 561 F.3d at 126 ("The discretionary relief available under Rule 60(b) is equitable.") A party seeking to avail itself of the relief under Rule 60(b)(6) must demonstrate: (1) "that extraordinary circumstances warrant relief[,]" Stevens, 676 F.3d at 67 (internal quotations and citations omitted); see also United Airlines, Inc. v. Brien, 588 F.3d 158, 175 (2d Cir. 2009) (holding that relief under Rule 60(b)(6) "is warranted where there are extraordinary circumstances, or where the judgment may work an extreme and undue hardship * * *."); Aczel v. Labonia, 584 F.3d 52, 61 (2d Cir. 2009) ("[The] catch-all provision of Rule 60(b)[6] allows courts to vacate judgments whenever necessary to

5

accomplish justice, although such relief should be granted only in extraordinary circumstances."); (2) that "the judgment may work an extreme and undue hardship," Nemaizer, 793 F.2d at 63; and (3) that "the asserted grounds for relief are not recognized in clauses (1)-(5) of the Rule [60(b)]." Id.

Petitioner, relying upon Corniel-Rodriguez v. Immigration and Naturalization Service, 532 F.2d 301 (2d Cir. 1976), seeks relief under Rule 60(b)(6) based upon the doctrine of equitable estoppel. In that case, the petitioner was born in the Dominican Republic; her father was admitted to the United States for permanent residence; and the petitioner applied to the American consulate for a visa as a "special immigrant" when she was nineteen (19) years old. Id. at 302-03. At that time, the "children's exemption" to the requirements of the "special immigrant" visa were "unavailable if the alien is married either at the time of application for the visa or at the time of admission to the United States." Id. at 303. A State Department regulation promulgated in 1960 "to protect minor aliens of marriageable age who might inadvertently forfeit their eligibility to enter [the United States] in ignorance of th[at] statute," id., required the consular officer to "warn an alien (issued a visa as a child), when appropriate, that he will be inadmissible as * * * [a special] immigrant if he is not unmarried at the time of application for admission * * *." Id. (quoting 22 C.F.R. § 42.122(d)). "A procedural note implementing the regulation provides that an alien of marriageable age to whom a visa has been issued on the basis of his or her status as a child should be given a special warning form, denominated 'FS-548 (Statement of Marriageable Age Applicant).'" Id. at 303-04. "The statement informs aliens, who are to acknowledge by signature having received the notice, that they will be ineligible for admission to the United States should they marry prior to entry." Id. at 304. One copy of the

6

form was to be attached to the immigrant visa and the other copy was to be affixed to the consular office file copy of the visa issued. Id. The petitioner was issued a special immigrant visa, but there was no copy of the FS-548 Form either attached to the petitioner's visa or contained in the consular office. Id. The petitioner testified at her deportation hearing that she had never been given any warning, written or oral, as required by the State Department regulation, and that had she been given such a warning, she would have postponed her wedding for three (3) days. Id. The petitioner's testimony was corroborated by the parties' stipulation that had the petitioner's mother been called to testify at the hearing, she would have testified that she had accompanied the petitioner to the interview at the American consulate and that no notice, oral or written, was ever given to the petitioner regarding the effect her marriage prior to entry would have upon her immigration status. Id.

The Second Circuit found, *inter alia*, that since "[d]eportation and denial of citizenship have, since ancient times, been among the most dreaded governmental sanctions, * * * courts * * * have been loath to interpret the Immigration & Nationality Act in a wooden fashion in those extraordinary cases in which such an unreflective approach would cause manifest and gross injustice." Corniel-Rodriguez, 532 F.2d at 305 (citation omitted). The Court further found:

> "In the case before us, a naive and poorly educated alien is alleged to be in noncompliance with a highly technical provision of the Act. But, that failure to comply would have been avoided if the American consular officer had adhered to the mandatory regulation enacted for the benefit of those who might find themselves charged with an unknowing and innocent violation of the Act. * * * We are * * * certain that Congress would not have wished the Government's flouting of the[] regulations to occasion the banishment of a hapless alien from our shores."

Id. at 306.

The Court held that "the Government's improper actions may preclude it from deporting an alien * * *," Id. at 306, and that "[t]he equities must always be carefully weighed in the context of the particular facts." Id. The Court found that since the consular officer's failure to provide the warning mandated by the State Department regulation was misleading and manifestly unjust, and his "noncompliance with an affirmatively required procedure, obviously designed to protect individuals in [the petitioner's] precise situation, was * * * an act of affirmative misconduct," id., at 306-07, the Government was precluded from deporting the petitioner. Id.

However, "[t]he doctrine of equitable estoppel against the government has narrowed substantially since Corniel-Rodriguez * * *." Ahmed v. Holder, 624 F.3d 150, 155 (2d Cir. 2010). "The doctrine of equitable estoppel is not available against the government except in the most serious of circumstances * * *, and is applied with the utmost caution and restraint." Drozd v. Immigration and Naturalization Service, 155 F.3d 81, 90 (2d Cir. 1998) (quotations and citations omitted). The Second Circuit applies "estoppel to the Government only in those limited cases where the party can establish both that the Government made a misrepresentation upon which the party reasonably and detrimentally relied and that the Government engaged in affirmative misconduct." City of New York v. Shalala, 34 F.3d 1161, 1168 (2d Cir. 1994).

Moreover, "unlike the petitioner in Corniel-Rodriguez, whose claims were considered credible and were supported by other evidence[]," Ahmed, 624 F.3d at 155, petitioner has not introduced any evidence to support her claims that she was naive, "was never given a warning or a statement of marriageable age" and "did not know she was not supposed to marry." (Petitioner's Memorandum of Law, unpaginated). Furthermore, petitioner concedes that she misrepresented her marital status upon her Petition to Remove the Conditions on Residence, as a

8

result of which she obtained an immigration benefit, i.e., lawful permanent residence status as a purported unmarried child of an United States citizen. Thus, under the circumstances of this case, the denial of petitioner's application for naturalization was not manifestly unjust and the equities do not weigh in favor of allowing petitioner to invoke the doctrine of equitable estoppel to preclude the government from denying her application for naturalization. See, e.g. Ahmed, 624 F.3d at 155-56 (finding (1) that the Board of Immigration Appeals ("BIA"): (a) did not abuse its discretion in refusing to hold that the government was estopped from removing the petitioner, "who introduced no evidence to support his claims beyond his own testimony, which itself was inconsistent and, most relevantly, not credited by the [immigration judge]," and who conceded that he had made false claims on his visa application and United States tax returns; and (b) "acted reasonably in concluding that [the petitioner] failed to demonstrate that removal would be manifestly unjust," and (2) that, therefore, the Court's decision in Corniel-Rodriguez was not controlling).[3] Since petitioner has not demonstrated any extraordinary circumstances justifying relief from the final judgment under Rule 60(b)(6) of the Federal Rules of Civil Procedure, that branch of her motion is denied.[4]

---

[3] Ahmed also involved facts similar to this case. In that case, the petitioner was issued an immigrant visa as the unmarried son of a United States citizen. Ahmed, 624 F.3d at 151. One week later, while still in Yemen, the petitioner entered into a marriage. Id. The petitioner was admitted at the New York port of entry under the visa granted to him as an unmarried son of a United States citizen. Id. In arguing that the BIA erred in declining to exercise its equitable authority to withhold removal, the petitioner claimed that the consular officer who issued the visa did not warn him that he would have to remain unmarried until he entered the United States and did not require him to sign a Statement of Marriageable Age. Id. at 154.

[4] In light of this determination, petitioner's motion for leave to replead is denied.

III.  Conclusion

For the reasons stated herein, petitioner's motion pursuant to Rules 60(b)(1) and (6) of the Federal Rules of Civil Procedure is denied in its entirety. The Clerk of the Court shall serve notice of entry of this Order on all parties, including petitioner *pro se* and petitioner's counsel designated on the petition, in accordance with Rule 77(d)(1) of the Federal Rules of Civil Procedure.

SO ORDERED.

s/ Sandra J. Feuerstein
_____
SANDRA J. FEUERSTEIN
United States District Judge

Dated: August 19, 2013
Central Islip, N.Y.